1.7 **Parts and Accessories**. "Parts and Accessories" means the parts and accessories needed to support the servicing of Chassis, and other parts and accessories marketed by Workhorse, which are listed in Workhorse's current Dealer Parts and Accessories price lists or supplements furnished to Dealer.

1.8 **Service Policies and Procedures Manual**. "Service Policies and Procedures Manual" means the manual issued from time to time by Workhorse which details certain administrative and performance requirements for Dealer service under the Agreement.

1.9 **Workhorse Products**. "Workhorse Products" means Chassis and Parts and Accessories.

## 2. APPOINTMENT AS AUTHORIZED DEALER

2.1 **Appointment**. Workhorse hereby appoints Dealer as a non-exclusive authorized Workhorse dealer for the retail sale and service of the Workhorse Products at and only at the Location, and Dealer hereby accepts such appointment on the terms and conditions set forth below.

2.2 **Reservation of Rights**. Workhorse reserves all rights not specifically granted herein, including the right to appoint such additional authorized dealers, distributors or sales representatives, or to make sales directly to customers, or to use such other means as it sees fit, to distribute or sell Workhorse Products.

## 3. DEALER OWNER/OPERATOR

3.1 **Dealer Ownership Requirements**. Workhorse enters into this Agreement in reliance on the qualifications of the dealer owner(s) identified in **Appendix B** ("Dealer Owner"). Dealer agrees that each Dealer Owner will continue to own, both of record and beneficially, the percentage of equity and voting rights stated in **Appendix B**, unless a change is made in accordance with Section 10.

3.2 **Services of Dealer Operator**. This is a personal services agreement, entered into in reliance on the qualifications of the person designated by Dealer to operate the business as identified in **Appendix B** ("Dealer Operator") and on Dealer's assurance that Dealer Operator will provide personal services by exercising full managerial authority over dealership operations.

## 4. AUTHORIZED LOCATIONS

4.1 **Facilities**.

4.1.1 **Location**. Dealer agrees to conduct its Dealership Operations only from the approved Location within its Area of Primary Responsibility. If more than one Location is approved, Dealer agrees to conduct from each Location only those Dealership Operations authorized in the Addendum for such Location.

**EXHIBIT B**

8.3 **Notifications**. In addition, Dealer will promptly notify Workhorse of:

8.3.1 any and every intended or accomplished change in the business name, form of organization, ownership, control or change of location of Dealer's business;

8.3.2 any claim of injury or damage, whether oral or in writing, made by any person or entity regarding Workhorse Products or of the need for abnormally repetitive repairs to any Workhorse Product; and

8.3.3 any apparent infringement of any Workhorse copyright or Mark.

8.4 **Prohibited Activities**. Dealer further agrees that it will not:

8.4.1 sell Workhorse Products at wholesale with the intent or for the purpose of resale, except that Dealer shall be authorized to sell Workhorse Products to other authorized Workhorse dealers;

8.4.2 advertise any business location which is not itself an authorized Workhorse dealership in any advertisement for Workhorse Products sold by Dealer, regardless of whether Dealer owns or is affiliated with the non-authorized location;

8.4.3 advertise and sell Workhorse Products in areas where Dealer is unable to provide timely warranty service;

8.4.4 transship Workhorse Products to any parties who are not, or to any locations (including Dealer's other locations) that are not authorized Workhorse dealerships, or engaging in joint advertising with any such nonauthorized locations;

8.4.5 make claims or giving warranties on Workhorse Products not authorized by Workhorse; or

8.4.6 engage in any illegal, deceptive, misleading or unethical practices.

## 9. REVIEW OF DEALER'S SALES AND SERVICE PERFORMANCE

9.1 **Review**. Dealer's performance of its obligations is essential to the effective representation of Workhorse's Products, and to the reputation and goodwill of Dealer, Workhorse and other authorized Workhorse dealers. Periodically, Workhorse will review various aspects of Dealer's sales and service performance. Workhorse and Dealer will use the review process to identify areas in which improvements or changes are necessary so that Dealer can take prompt action to achieve acceptable performance.

## 10. CHANGES IN MANAGEMENT AND OWNERSHIP

10.1 **Changes in Ownership or Management**. If Dealer proposes a change in Dealer Operator, a change in ownership, or a transfer of the dealership business or its principal assets to any person conditioned upon Workhorse's entering into an authorized dealer agreement with that

11.6.5 take all necessary steps to remove all references to any Marks or to Dealer being an Authorized Workhorse Dealer in all Yellow Pages or other classified advertising.

Dealer acknowledges that Workhorse has no adequate remedy at law should Dealer fail to honor its obligations upon termination with respect to Workhorse's trademarks, and therefore consents to entry of an injunction without bond or security by any court of competent jurisdiction in the event Dealer does not promptly comply with any of its obligations hereunder.

11.7 **Attorney's Fees**. Dealer will promptly reimburse Workhorse for all legal fees and other expenses incurred in connection with action to require Dealer to comply with this Section 11.

## 12. TERM AND TERMINATION

12.1 **Term**. This Agreement shall become effective only upon signature by both parties and the obtaining by each party of any required licenses, and shall remain in effect until it expires on May 5, 2003. This Agreement shall automatically be renewed for successive one year periods thereafter unless Workhorse notifies Dealer at least 90 days prior to the original expiration date or any annual renewal date that this Agreement will not be renewed, or unless this Agreement is sooner terminated as provided in this Section 12.

12.2 **Successor Agreement.** Dealer agrees that, as a condition for any renewal of this Agreement and upon Workhorse's request, Dealer will execute Workhorse's then current Authorized Dealer Agreement. Dealer's failure to execute any such Authorized Dealer Agreement prior to any annual renewal date shall cause the automatic termination of this Agreement as of its anniversary date. Dealer may enter into a successor Authorized Dealer Agreement with Workhorse on expiration only if Workhorse determines that Dealer has fulfilled its obligations under this Agreement.

12.3 **Material Breaches with Right to Cure**. Subject to Section 16.10, Workhorse may terminate this Agreement by written notice to Dealer, effective 60 days from receipt of notice, if Dealer does not cure any of the following material breaches within 30 days of receipt of written notice from Workhorse:

12.3.1 Refusal by Dealer to timely furnish sales, service or financial information and related supporting data, or to permit Workhorse's examination or audit of Dealer's accounts and records.

12.3.2 Failure of Dealer to timely pay its obligations to Workhorse.

12.3.3 Any other material breach of Dealer's obligations under this Agreement not otherwise specifically identified in Section 12.

12.4 **Breaches Causing Immediate Termination**. Subject to Section 16.10, Workhorse may terminate this Agreement by giving Dealer written notice of termination, termination to be effective immediately or on the date specified in the notice, upon the happening of any of the following events:

12.4.1 The removal, resignation, withdrawal or elimination from Dealer for any reason of any Dealer Operator or Dealer Owner without Workhorse's prior written approval.

12.4.2 Any attempted or actual sale, transfer or assignment by Dealer of this Agreement or any of the rights granted Dealer hereunder, or any attempted or actual transfer, assignment or delegation by Dealer of any of the responsibilities assumed by it under this Agreement contrary to the terms of this Agreement.

12.4.3 Any change, whether voluntary or involuntary, direct or indirect, in the record or beneficial ownership or voting control of Dealer as set forth in **Appendix B**, unless permitted by Section 10.1.5 or pursuant to Workhorse's written approval.

12.4.4 Any undertaking by Dealer or any of its owners to conduct, either directly or indirectly, any of the Dealership Operations at any unapproved location.

12.4.5 Any sale, transfer, relinquishment or discontinuance of use by Dealer of any of the Dealership premises or other principal assets required in the conduct of the Dealership Operations, without Workhorse's prior written approval.

12.4.6 Any dispute among the owners or management personnel of Dealer which, in Workhorse's opinion, may adversely affect the Dealership Operations or the interests of Dealer or Workhorse.

12.4.7 A finding by a government agency or court of original jurisdiction or a settlement arising from charges that Dealer, or a predecessor of Dealer owned or controlled by the same Person, had committed a misdemeanor or unfair or deceptive business practice which, in Workhorse's opinion, may adversely affect the reputation or interests of Dealer or Workhorse.

12.4.8 Failure of Dealer to comply with the provisions of any laws or regulations relating to the sale or service of Workhorse Products.

12.4.9 Submission by Dealer of false applications or reports, including false orders for Workhorse Products or reports of delivery or transfer of Workhorse Products.

12.4.10 Failure of Dealer to maintain the line of credit required by Section 8.1.3.

12.4.11 Conviction in a court of original jurisdiction of Dealer, or a predecessor of Dealer owned or controlled, directly or indirectly, by one or more of Dealer's Owners, or any Dealer Operator or Dealer Owner, of any felony.

12.4.12 Failure of Dealer to conduct customary sales and service operations during customary business hours for seven consecutive business days.

12.4.13 Any misrepresentation to Workhorse by Dealer or by any Dealer Operator or Dealer Owner in applying for this Agreement, or in identifying the Dealer Operator, of record or beneficial ownership or voting interests of Dealer.