**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

ANDCO, INC. d/b/a ANDERSON MOTORS,
Plaintiff,

VS.

C.A. No.: 07-00159-T-LDA

WORKHORSE CUSTOM CHASSIS, LLC and
WORKHORSE SALES CORP.,
Defendants.

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

The Plaintiff has filed a Verified Complaint and an Affidavit of John E. Anderson, Jr. in support of, inter alia, the Plaintiff's Motion for Temporary Restraining Order (the "Motion") to enjoin the termination/non-renewal by the Defendant Workhorse Custom Chassis, LLC ("Workhorse") of the Plaintiff's Workhorse truck franchise. The Plaintiff submits this Memorandum to clarify certain legal and factual issues related to the Motion.

## 1. UNDER R.I.G.L. 31-5.1-4(D)(2), THERE IS NO DIFFERENCE BETWEEN A MOTOR VEHICLE FRANCHISE TERMINATION AND A MOTOR VEHICLE FRANCHISE NON-RENEWAL.

Workhorse has argued that the Court should treat the purported non-renewal by Workhorse of the Plaintiff's franchise differently than if the franchise was terminated on other than the expiration of the term of the franchise. But under the clear language of R.I.G.L. 31-5.1-4(d)(2), the legal standard that a manufacturer must meet in order to justify a franchise non-renewal is exactly the same as the standard it must meet to terminate a

franchise during the term of any franchise agreement. The exact wording of R.I.G.L. 31-5.1-1 et seq. (the "Dealer Law") in 31-5.1-4(d)(2) is as follows (emphasis added):

> (2) Notwithstanding the terms, provisions, or conditions of any franchise, whether entered into before or after the enactment of this chapter of any of its provisions, or notwithstanding the terms or provisions of any waiver, whether entered into before or after the enactment of this chapter or any of its provisions, no manufacturer shall cancel, terminate, or fail to renew any franchise with a licensed new motor vehicle dealer unless the manufacturer has:
>
> (i) Satisfied the notice requirements of subdivision (5) of this subsection;
>
> (ii) Has good cause for the cancellation, termination, or non-renewal;
>
> (iii) Has not committed any violations set forth in subsection (b) of this section; and
>
> (iv) Has acted in good faith as defined in this chapter and has complied with all provisions of this chapter.

## 2. THE RELEVANT FRANCHISE AGREEMENT UNDER R.I.G.L. 31-5.4-4(C)(17) IS NOT EXPIRING AT THIS TIME.

The relevant Authorized Dealer Agreement (the "Franchise Agreement") purports to be a one-year agreement subject to annual automatic renewals, unless Workhorse provides a 90-day notice of non-renewal to the Plaintiff (see Paragraph 12.1 of the Franchise Agreement attached hereto as Exhibit A). However, this paragraph of the Franchise Agreement is superceded by R.I.G.L. 31-5.4-4(c)(17) which provides as follows (emphasis added): "In no instance shall the term of any franchise agreement be of a duration of less than three (3) years." Therefore, when the Franchise Agreement was

automatically renewed for a period beginning May 1, 2006, the duration of that Franchise Agreement was by operation of law for a period of three years, i.e., ending April 30, 2009. In addition, assuming arguendo that the Court accepts that the Franchise Agreement by operation of law extends until April 30, 2009, then Workhorse's attempts to differentiate this "termination" on the basis that it is a "non-renewal" is no longer a valid distinction for purposes (of the Plaintiff's contractual right to an "opportunity to cure". If indeed the Franchise Agreement is not coming to the end of a term by operation of law, the Plaintiff is entitled under the clear language of the Franchise Agreement to an opportunity to cure under Paragraph 12.3 of the Franchise Agreement prior to any franchise termination (see Exhibit A attached).

3. **WORKHORSE'S NOTICE REFERENCES A TERMINATION DATE TWO (2) DAYS AFTER THE STATED ANNIVERSARY EXPIRATION DATE OF THE FRANCHISE AGREEMENT, SO THE "TERMINATION" DOES NOT QUALIFY AS A NON-RENEWAL.**

The Notice references a "termination date" of the Plaintiff's franchise of May 7, 2007, two (2) days after the stated anniversary expiration date of the Franchise Agreement on May 5, 2007. If the Franchise Agreement expired on May 5, 2007, and if it was supposedly non-renewed, then query what franchise agreement was in effect between the parties for the brief period of time between the stated anniversary expiration date and the effective date of

the termination? The stated effective date of the termination is inconsistent with an alleged non-renewal, since the stated effective date of the termination is not on the stated anniversary expiration date of the Franchise Agreement.

## 4. R.I.G.L. 31-5.1-4(D)(5) REQUIRES THAT IN A TERMINATION NOTICE, THE PLAINTIFF BE GIVEN THE REASONS FOR THE TERMINATION OR NON-RENEWAL, WHICH REASONS WERE NOT IN THE NOTICE.

The exact language of R.I.G.L. 31-5.1-4(d)(5) is as follows: "(ii) Notification under this subsection shall be in writing, shall be by certified mail or personally delivered to the new motor vehicle dealer, and shall contain: ... (B) A statement of the reasons for the termination, cancellation, or non-renewal; ...". Workhorse's Notice clearly does not satisfy the notice requirements of the Dealer Law, in that the only reason given for the termination was an alleged violation of Section 8.4.6 of the Franchise Agreement (see Exhibit B attached). While there have been recent references by Workhorse representatives that the alleged violation described above consisted of the alleged breach of a Management Agreement in Massachusetts by certain members of the Anderson Family, the Plaintiff did not know what conduct by which persons constituted the alleged violation of Section 8.4.6 of the Franchise Agreement until Workhorse's attempt to provide the reasons for termination in the past few days. A reference in an Affidavit filed by Workhorse yesterday to the

effect that the Plaintiff's counsel was verbally given the reasons for termination some sixty (60) days after the Notice was sent, does not satisfy the statutory notice requirements.

5. **THE ALLEGED CONDUCT WHICH APPARENTLY IS THE BASIS FOR THE FRANCHISE TERMINATION WAS NOT ENGAGED IN BY THE PLAINTIFF'S OWNERS OR OPERATORS.**

Under the Franchise Agreement, the recognized "Dealer Owner" is John E. Anderson (Sr.) and Judith Anderson (see Paragraph 3 and Appendix B of the Franchise Agreement attached hereto as Exhibit C). And, the Franchise Agreement in Paragraph 3 emphasizes that it is a "personal services agreement" limited to the listed "Dealer Operator" who is John E. Anderson (Sr.). Neither John E. Anderson (Sr.) nor Judith Anderson were parties to the Management Agreement in Massachusetts, the breach of which is apparently the basis for the termination of the Plaintiff's franchise. The parties to the Management Agreement are other members of the Anderson family who are not named in any way in the Franchise Agreement, and who are not in fact owners of the Plaintiff. The statutory definition of a dealer in R.I.G.L. 31-5.1-1(11) and (12) was not intended to make "Dealer Owners" and "Dealer Operators" responsible for acts of third parties, even when those third parties are employed by the franchised dealership (Note: John E. Anderson, Sr. has been added as a party in the Massachusetts litigation to assert his alleged contractual rights outside of

the relevant Management Agreement, which fact does not make him a direct party to the Management Agreement).

## 6. THE ALLEGED CONDUCT IN MASSACHUSETTS EVEN IF ATTRIBUTABLE TO THE PLAINTIFF IS NOT A SUFFICIENT BASIS FOR FRANCHISE TERMINATION.

**(a)** The apparent alleged basis for the franchise termination is the actions taken by the managers under the Management Agreement in Massachusetts, to place certain Massachusetts dealership funds into escrow while the disputes between the managers and International/Navistar are being resolved. Contrary to Workhorse's assertions, there has been no determination in the Massachusetts controversy that the funds in question were "stolen" by the managers. In fact, by Court Order, the funds have now been placed into the hands of a third-party escrow agent while the disputes are being resolved in the Massachusetts Courts. As described in the Affidavit of John E. Anderson, Jr. (one of the managers), the funds in question were taken for the sole purpose of being protected in escrow pending resolution of the disputes, and, International/Navistar's attorneys were immediately notified by the managers of the action being taken to protect the money prior to International/Navistar being aware that the funds were being protected in that manner. Even if the mangers are ultimately unsuccessful in their claim of right for any portion of the funds in question, their failure to prevail in their claim does not automatically mean that the

acts in protecting the funds constitute a sufficient basis for a franchise termination even if such acts are somehow attributable to the Plaintiff.

**(b)** The basis for the franchise termination is a dispute over certain funds between the managers under a Management Agreement and the International/Navistar franchises, with the franchisor for those franchises being a separate corporation not directly owned by Workhorse. It is not appropriate for a Workhorse truck franchise to be terminated for alleged problems dealing with an International/Navistar truck franchise, even if the two franchises happen to have the same parent company.

**(c)** The delay by Workhorse of approximately four (4) months in sending the Notice after having knowledge of the alleged "stolen funds" is inconsistent with Workhorse's attempt to characterize the alleged conduct in question as virtually equivalent to criminal conduct.

## 7. THE PLAINTIFF MEETS THE WELL ESTABLISHED CRITERIA FOR OBTAINING INJUNCTIVE RELIEF.

The Plaintiff meets the criteria for obtaining injunctive relief as follows:

(a) Likelihood of success on the merits. The Notice was procedurally defective as described above, and substantively deficient because there is not good cause for franchise non-renewal as described above. If any single procedural or substantive basis for the Notice being ineffective is considered by the Court to have merit, that finding is sufficient to demonstrate the Plaintiff's likelihood of success on the merits.

(b) Irreparable harm. The Plaintiff can show irreparable harm in that the loss of the Plaintiff's franchise will cause damages in lost business and goodwill that cannot possibly be measured. In addition, the Plaintiff has the only Workhorse franchise in Rhode Island.

(c) The balance of the equities. The balance of the equities weighs in favor of the issuance of an injunction, since the Plaintiff is in danger of losing an important property right, and the harm to Workhorse in the Plaintiff continuing as a franchise dealer is minimal, if any.

(d) The preservation of the status quo. Clearly, the issuance of injunctive relief will preserve the status quo pending the resolution of the legal and factual issues presented by this case.

(e) The public interest. Since the Plaintiff is the only Workhorse dealer in Rhode Island, the public interest will be protected by this Court enjoining the termination of the Plaintiff's Workhorse truck franchise.

## 8. THE STATUTORY AUTHORITY FOR AN INJUNCTION UNDER R.I.G.L. 31-5.1-13 JUSTIFIES THE INJUNCTIVE RELIEF BEING GRANTED EVEN IF THE USUAL CRITERIA FOR OBTAINING INJUNCTIVE RELIEF IS NOT MET.

Under R.I.G.L. 31-5.1-13, the Plaintiff is entitled to bring a civil action to enjoin violations of the Dealer Law. Since injunctive relief is specifically authorized by statute for any violation of the Dealer Law by a manufacturer, it is appropriate for the Court to simply determine if Workhorse is likely to be in violation of the Dealer Law by virtue of any of

the procedural or substantive arguments above, or by virtue of the Complaint and its Exhibits (including the Affidavit). If such a determination is made by the Court, then this Court based on the statutory authorization may simply enjoin Workhorse's threatened termination regardless of whether or not the criteria for obtaining injunctive relief as described in Section 7 of this Memorandum are met.

## 9. UNDER R.I.G.L. 31-5.1-4(D)(4), WORKHORSE HAS THE BURDEN OF PROOF TO DEMONSTRATE THAT THE STATUTORY NOTICE REQUIREMENTS HAVE BEEN MET, AND THAT THERE WAS GOOD CAUSE FOR NON-RENEWAL OR TERMINATION.

ANDCO, INC. d/b/a ANDERSON MOTORS,
By its attorney,

/s/ Joshua Teverow
Joshua Teverow, Esquire (#2132)
Joshua Teverow, Esquire, Ltd.
55 Pine Street
Providence, Rhode Island 02903
401-272-2900 (Phone)
401-331-2656 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Plaintiff's Memorandum in Support of Motion for Temporary Restraining Order through the ECF system on the 15th day of May, 2007, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case No. 07-00159-T-LDA.

/s/ Joshua Teverow