EXHIBIT A

## 12. TERM AND TERMINATION

12.1 **Term**. This Agreement shall become effective only upon signature by both parties and the obtaining by each party of any required licenses, and shall remain in effect until it expires on May 5, 2003. This Agreement shall automatically be renewed for successive one year periods thereafter unless Workhorse notifies Dealer at least 90 days prior to the original expiration date or any annual renewal date that this Agreement will not be renewed, or unless this Agreement is sooner terminated as provided in this Section 12.

12.2 **Successor Agreement.** Dealer agrees that, as a condition for any renewal of this Agreement and upon Workhorse's request, Dealer will execute Workhorse's then current Authorized Dealer Agreement. Dealer's failure to execute any such Authorized Dealer Agreement prior to any annual renewal date shall cause the automatic termination of this Agreement as of its anniversary date. Dealer may enter into a successor Authorized Dealer Agreement with Workhorse on expiration only if Workhorse determines that Dealer has fulfilled its obligations under this Agreement.

12.3 **Material Breaches with Right to Cure**. Subject to Section 16.10, Workhorse may terminate this Agreement by written notice to Dealer, effective 60 days from receipt of notice, if Dealer does not cure any of the following material breaches within 30 days of receipt of written notice from Workhorse:

12.3.1 Refusal by Dealer to timely furnish sales, service or financial information and related supporting data, or to permit Workhorse's examination or audit of Dealer's accounts and records.

12.3.2 Failure of Dealer to timely pay its obligations to Workhorse.

12.3.3 Any other material breach of Dealer's obligations under this Agreement not otherwise specifically identified in Section 12.

12.4 **Breaches Causing Immediate Termination**. Subject to Section 16.10, Workhorse may terminate this Agreement by giving Dealer written notice of termination, termination to be effective immediately or on the date specified in the notice, upon the happening of any of the following events:

12.4.1 The removal, resignation, withdrawal or elimination from Dealer for any reason of any Dealer Operator or Dealer Owner without Workhorse's prior written approval.

12.4.2 Any attempted or actual sale, transfer or assignment by Dealer of this Agreement or any of the rights granted Dealer hereunder, or any attempted or actual transfer, assignment or delegation by Dealer of any of the responsibilities assumed by it under this Agreement contrary to the terms of this Agreement.

12.4.3 Any change, whether voluntary or involuntary, direct or indirect, in the record or beneficial ownership or voting control of Dealer as set forth in **Appendix B**, unless permitted by Section 10.1.5 or pursuant to Workhorse's written approval.

12.4.4 Any undertaking by Dealer or any of its owners to conduct, either directly or indirectly, any of the Dealership Operations at any unapproved location.

12.4.5 Any sale, transfer, relinquishment or discontinuance of use by Dealer of any of the Dealership premises or other principal assets required in the conduct of the Dealership Operations, without Workhorse's prior written approval.

12.4.6 Any dispute among the owners or management personnel of Dealer which, in Workhorse's opinion, may adversely affect the Dealership Operations or the interests of Dealer or Workhorse.

12.4.7 A finding by a government agency or court of original jurisdiction or a settlement arising from charges that Dealer, or a predecessor of Dealer owned or controlled by the same Person, had committed a misdemeanor or unfair or deceptive business practice which, in Workhorse's opinion, may adversely affect the reputation or interests of Dealer or Workhorse.

12.4.8 Failure of Dealer to comply with the provisions of any laws or regulations relating to the sale or service of Workhorse Products.

12.4.9 Submission by Dealer of false applications or reports, including false orders for Workhorse Products or reports of delivery or transfer of Workhorse Products.

12.4.10 Failure of Dealer to maintain the line of credit required by Section 8.1.3.

12.4.11 Conviction in a court of original jurisdiction of Dealer, or a predecessor of Dealer owned or controlled, directly or indirectly, by one or more of Dealer's Owners, or any Dealer Operator or Dealer Owner, of any felony.

12.4.12 Failure of Dealer to conduct customary sales and service operations during customary business hours for seven consecutive business days.

12.4.13 Any misrepresentation to Workhorse by Dealer or by any Dealer Operator or Dealer Owner in applying for this Agreement, or in identifying the Dealer Operator, of record or beneficial ownership or voting interests of Dealer.

12.4.14 Submission by Dealer of false applications or claims for any payment, credit, discount, or allowance, including false applications in connection with incentive activities, where the false information was submitted to generate a payment to Dealer for a claim which would not otherwise have qualified for payment.

12.5 **Automatic Expiration.** This Agreement will expire automatically if either: Dealer becomes insolvent or there is a filing by or against Dealer of a petition in bankruptcy, or filing of a proceeding for the appointment of a receiver or trustee for Dealer; or Dealer makes an assignment for the benefit of creditors; or there is any foreclosure or other due process of law whereby a third party acquires rights to the operation, ownership or assets of Dealer.

12.6 **Failure of Performance by Dealer.** If Dealer has failed to adequately perform its sales or service responsibilities, including those responsibilities relating to customer satisfaction and training, Workhorse will review such failure with Dealer. As soon as practicable thereafter, Workhorse will notify Dealer in writing of the nature of Dealer's failure and of the period of time (which shall not be less than 60 days) during which Dealer will have the opportunity to correct the failure. If Dealer does correct the failure by the expiration of the period, Workhorse will so advise the Dealer in writing. If, however, Dealer does not correct the failure by the expiration of the period, Workhorse may terminate this Agreement by giving Dealer 60 days advance written notice.

12.7 **By Dealer**. Dealer has the right to terminate this Agreement without cause at any time upon written notice to Workhorse. Termination by Dealer pursuant to this Section will be effective 90 days after Workhorse's receipt of the notice, unless otherwise mutually agreed in writing.

12.8 **By Agreement**. This Agreement may be terminated at any time by written agreement between Workhorse and Dealer.

12.9 **Failure to be Licensed**. If Dealer fails to maintain any license required for the performance of obligations under this Agreement or such license is suspended or revoked, Workhorse may immediately terminate this Agreement by giving Dealer written notice.

12.10 **Incapacity of Dealer Operator**. Because this is a personal services agreement, Workhorse may terminate this Agreement by written notice to Dealer if Dealer Operator is so physically or mentally incapacitated that the Dealer Operator is unable to actively exercise full managerial authority. Dealer's incapacity shall be determined by Workhorse in its good faith judgment. The effective date of termination will be stated in such written notice and will be not less than three months after receipt of such notice.

12.11 **Reliance on Any Applicable Termination Provision**. The terminating party may select the provision under which it elects to terminate without reference in its notice to any other provision that may also be applicable. The terminating party subsequently also may assert other grounds for termination. Termination shall not be a party's exclusive remedy or constitute a waiver of any other remedy.

12.12 **Transactions After Expiration or Termination**.

12.12.1 **Effect on Orders**. If Dealer and Workhorse do not enter into a successor Authorized Dealer Agreement when this Agreement expires or is terminated, all of Dealer's outstanding orders for Workhorse Products will be automatically cancelled. Expiration or termination of this Agreement will not release Dealer or Workhorse from the obligation to pay any amounts owing the other, nor release Dealer from the obligation to pay for any Workhorse Product if Workhorse has begun processing such orders prior to the effective date of termination.

12.12.2 **Effect of Transactions After Termination**. Neither the sale of Workhorse Products to Dealer nor any other act by Workhorse or Dealer after termination of this Agreement will be construed as a waiver of the termination.

12.13 **Return of Property**. Upon termination or expiration, Dealer shall return all materials bearing the Marks, any software provided by Workhorse, the Service Policies and Procedures Manual, price lists, Workhorse Product lists and any other proprietary or Confidential Information of Workhorse.