UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**ANDCO, INC. dba ANDERSON MOTORS,**

vs. CA No. 07-00159-T-LDA

**WORKHORSE CUSTOM CHASSIS,LLC and WORKHORSE SALES CORP.**

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

The Plaintiff (ANDCO), submits this Supplemental Memorandum to clarify certain legal issues raised for further briefing by Justice Torres' following a May 15, 2007 hearing granting the Plaintiff a Temporary Restraining Order, namely:

A. What Type of Detailed Reasons Must be Provided in a "Statement of Reasons for Termination, Cancellation, or Non-Renewal" under RIGL 31-5.1-4(d)(5)(ii)? and

B. Does the Statutory Authorization to Obtain an Injunction under RIGL 31-5.1-13 Abrogate the Requirement to Show Irreparable Harm?

FACTUAL TRAVEL.

The Defendant Workhorse Custom Chassis, LLC ("Workhorse"), sent to ANDCO a document dated February 1, 2007 which stated only that the reason for termination/non-renewal "is a violation of Section 8.4.6 of the Dealer Agreement". Section 8.4.6 states that: "Dealer further agrees that it will not….engage in any illegal, deceptive, misleading or unethical practices." ANDCO asserts it was given not given the statutory required notice because the reference to Section 8.4.6 of the Dealer Agreement failed to notify the Plaintiff of any specific wrongful acts, since Section 8.4.6 states only conclusory adjectives without descriptive fact. Without any detailed factual presentation, Workhorse failed to provide effective notice of any conduct of ANDCO constituting good cause for termination. Therefore, Workhorse violated the Notice requirement of RIGL 31-5.1-4(d)(5).

**A. A "STATEMENT OF THE REASONS" FOR TERMINATION/NON-RENEWAL MUST INCLUDE A NARRATIVE OF FACT OR EXACT DETAILED PRESENTATION OF THE CAUSE(S) FOR WHICH TERMINATION/NON-RENEWAL IS DEMANDED; OTHERWISE IT IS DEFECTIVE NOTICE.**

1. A "STATEMENT OF THE REASONS" NOTICE IS REQUIRED TO SATISFY THE GOOD CAUSE AND GOOD FAITH REQUIREMENT OF RIGL 31-5.1-4(d)(2).

The Notice requirement is fundamental to establishing "good cause" and "good faith" by a manufacturer prior to terminating a dealership.

RIGL 31-5.1-4(d)(2) states:

(2) Notwithstanding the terms, provisions, or conditions of any franchise, … no manufacturer shall cancel, terminate, or fail to renew any franchise with a licensed new motor vehicle dealer unless the manufacturer has:
(i) **Satisfied the notice requirement of subdivision (5) of this subsection;**
(ii) Has good cause for the cancellation, termination, or nonrenewal;
(iii) Has not committed any violations set forth in subsection (b) of this section; and
(iv) **Has acted in good faith as defined in this chapter and has complied with all provisions of this chapter.**

RIGL 31-5.1-4(d) (5), (referred to by (2)(i) above) states:

(5) *Notification of termination, cancellation, and nonrenewal.*

(ii) Notification under this subsection shall be in writing, shall be by certified mail or personally delivered to the new motor vehicle dealer, and shall contain:

(A) A statement of intention to terminate, cancel, or not to renew the franchise;

(B) **A statement of the reasons for the termination, cancellation, or nonrenewal**; and

(C) The date on which the termination, cancellation, or nonrenewal shall take effect.

The above statute is a "Franchise Protection Statute." Dunne Leases Cars & Trucks v. Kenworth Truck Co., 466 A.2d 1153, 1157-1158 (R.I. 1983). The purpose of this kind of regulatory legislation is remedial; the statute is designed primarily to prevent arbitrary termination on the part of a manufacturer at the expense of a dealer, and also to prevent harm to the general public. Franchise-protection statutes are intended to rectify "grossly disproportionate bargaining power." Id.

a. The term "good cause" has not been defined by the statute, but in Dunne, the Court looked to an analogous statute and other case law holding that actions would constitute good cause if there was "substantial noncompliance with the obligations of the franchise agreement." Id.

b. The term "good faith" has not been defined by the statute, but one element of good faith is that the manufacturer properly notify the dealer under the statute that the dealer is not adhering to the Franchise Agreement. Scuncio Motors, Inc. v. Subaru of New England, Inc., 555 F. Supp. 1121, 1133 (D.R.I. 1982).

In light of the nexus between Notice, Good Cause, and Good Faith, any manufacturer must provide the dealer with notice of what specific actions were in "substantial noncompliance with the obligations of the Franchise Agreement." Otherwise, a manufacturer could simply write a conclusory statement that the dealer was "in violation of the agreement" without specifying which obligations were breached, and the good cause requirement of whether the breach was substantial could never be challenged. Workhorse did not satisfy the notice requirement by providing merely conclusory adjectives regarding ANDCO's conduct rather than evidence of any specific conduct to establish good cause.

2. A "STATEMENT" REQUIRES EXACT AND DETAILED PRESENTATION OF FACTS.

Dictionary definitions are a recognized source for statutory interpretation. See Coady Corp. v. Toyota Motor Distribs., 361 F.3d 50, 55 (1st Cir. 2004); Scuncio Motors, Inc. v. Subaru of New England, Inc., 555 F. Supp. 1121, 1128 (D.R.I. 1982).
According to Black's Law Dictionary definition, a statement requires a factual presentation.

> **"Statement": "In a general sense, an allegation; a declaration of matters of fact. The term has come to be used of a variety of formal narratives of facts, required by law in various jurisdictions as the foundation of judicial or official proceedings and in a limited sense is a formal, exact, detailed presentation."**

The letter from Workhorse gave no "statement of the reasons" for termination. The reference to Section 8.4.6 is simply a referenece to a list of adjectives that do not describe any alleged conduct. ANDCO was not told in the notice of any conduct by it that constituted "illegal, deceptive, misleading or unethical practices". Therefore, ANDCO could not determine

whether the alleged cause for termination was "good cause" under the dealer statute. Similarly, ANDCO had no ability to determine whether the alleged cause for termination was a mere pretext or subterfuge, or whether or not Workhorse acted in "good faith" under the dealer statute.

3. THE BURDEN OF PROOF TO SHOW PROPER NOTICE IS ON THE MANUFACTURER.

Under Rhode Island law, Workhorse has "the burden of proof for showing that the notice requirements have been complied with, that there was good cause for franchise termination, cancellation or nonrenewal, and that (it) has acted in good faith." Scuncio Motors, Inc. v. Subaru of New England, Inc., 555 F. Supp. 1121, 1132 (D.R.I. 1982).

4. UNDER THE RULES OF STATUTORY CONSTRUCTION, WORKHORSE FAILED TO PROVIDE PROPER NOTICE OF GOOD CAUSE FOR TERMINATION.

In construing a statute, one must ascertain the intent behind its enactment and not frustrate that intent. Kingsley v. Miller, 120 R.I. 372, 388 A.2d 357 (1978). In order to glean the legislative intent, the Court must examine the language, nature, and object of the statute. Berthiaume v. School Committee of Woonsocket, 121 R.I. 243, 397 A.2d 889 (1979) cited in Dunne Leases Cars & Trucks v. Kenworth Truck Co., 466 A.2d 1153, 1156 (R.I. 1983) (the statute is designed primarily to prevent arbitrary termination on the part of a manufacturer). Workhorse claims that it verbally advised ANDCO's attorneys after the Termination Notice was issued, why it was terminating ANDCO's franchise, but such communication does not constitute sufficient notice under the statute, and is not even relevant to the legal issues presented by ANDCO's request for preliminary injunction. Even a prior verbal notice before the Termination Notice was sent would not be valid. If we were to accept Workhorse's argument that verbal notice of conduct either before or after the termination is sufficient, the requirement of written notice by certified mail containing "a statement of the reasons" for termination would be useless protection to the dealer, and the statutory purpose would be obviated. This would go against our Court's fundamental premise that statutes should not be construed to achieve meaningless or absurd results. Id. see also,Harvard Pilgrim Health Care of New Eng., Inc. v. Gelati, 865 A.2d 1028, 1039 (R.I. 2004).

5. STRICT COMPLIANCE WITH STATUTORY NOTICE LANGUAGE IS MANDATED BY THE STATUTE'S PURPOSE, AND WORKHORSE FAILED TO PROVIDE A "STATEMENT OF THE REASONS" FOR TERMINATION.

According to the Defendants in their Memorandum of May 14, 2007, p. 6:

"Nothing in the Law says that the statement of reasons has to be anything more than a citation to the specific Agreement provision which the dealer breached."

The Defendants will be hard-pressed to find a case in Rhode Island or elsewhere that upholds a manufacturer's termination of a dealer franchise without setting forth factual reasons of detailed conduct sufficient for a court to determine whether the termination was motivated by good cause and good faith. See Dunne Leases Cars & Trucks, Inc. v. Kenworth Truck Co., 466 A.2d 1153 (R.I. 1983) and Scuncio Motors, Inc. v. Subaru of New England, Inc., 555 F. Supp. 1121 (D.R.I. 1982), aff'd, 715 F.2d 10 (1st Cir. 1983). In Scuncio, the Court referenced the explicit reasons given to the dealer in the Termination Notice which gave notice to the dealer of the actions causing termination:

"SNE informed Scuncio therein that its failure to meet the standards and to comply with the relocation provisions of the Agreement constituted material breaches of the Agreement and furnished good cause for canceling and terminating the Agreement. Mr. Scuncio testified that he considered the contents of the letter to be "fairly close" to accurate, and never told SNE that any of the factual information was wrong." Id.

As the Court in Scuncio noted, "subterfuges and evasions violate the obligation of good faith in performance…". Among the types of bad faith that have been recognized in judicial decisions: evasion of the spirit of the bargain, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance. Restatement of Contracts (Second) § 205 comment d (1979) cited in Scuncio Motors, Inc. v. Subaru of New England, Inc., 555 F. Supp. 1121, 1132 (D.R.I. 1982).

Case law in other jurisdictions with similar statutes holds that more than a mere citation to a contract provision is required. A manufacturer can not simply point to a contract provision unless the provision itself gives a factual description of the prohibited conduct by the dealer. GMC v. New A.C. Chevrolet, 263 F.3d 296, 326-327 (3d Cir. 2001). A manufacturer who chooses to terminate a dealer can not immunize itself from dealer good faith liability by simply pointing to a franchise agreement provision with which the dealer ostensibly failed to comply

and assert that such provision was the basis for its severance of the franchise relationship. Id. Without a manufacturer's "objectively valid reasons for terminating its relations with a dealer," a franchisee is left unable to adequately challenge "whether a manufacturer has acted with sufficient justification to constitute good faith in bringing pressure to bear on a dealer"(a factual question). Id.

The language "a statement of the reasons" in a dealer protection statute was analyzed in an analogous case involving a wine distributor. See Viviano-Wine Importers, Inc. v Kendall Jackson Winery, Ltd., 1991 U.S. Dist. LEXIS 8717 (E.D. Mich. 1991). In that case, the winery gave the distributor notice that it was "not in compliance with the parties' agreement." This notice was determined to be inadequate under the Michigan statutory language similar to the statute currently under review, i.e.:

> "The notice shall be by certified mail and shall contain all of the following:
> (a) A statement of intention to terminate, cancel, not renew, or discontinue the agreement.
> (b) **A statement of the reason for the termination**, cancellation, nonrenewal or discontinuance.
> (c) The date on which the termination, cancellation, nonrenewal, or discontinuance takes effect."

The winery claimed that the specific facts were relayed in verbal conversations but the Court dismissed that argument. The Court found that verbal notice did not satisfy the statutory requisite of a written "statement of the reasons" and further found that the mere reference to "non-compliance with the parties agreement" did not satisfy the language requiring a "statement of the reasons", and therefore the winery did not comply with the statute and as a result did not act in good faith in its termination.

In a case involving a similar notice statute for termination of a petroleum franchise, the First Circuit Court of Appeals held that strict compliance with statutory language of notice provisions was mandated. Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co., 295 F.3d 68, 77-79 (1st Cir. 2002). In that case the Defendant, Sun Oil, did not provide a "statement of reasons for termination" under the statute but claimed that Seahorse was told numerous times of what it was doing wrong. Sun Oil argued that imposing a strict notice requirement under the statute (i.e. a "statement of the reasons") would elevate form over substance because the dealer was

already on notice as to why Sun Oil intended to terminate the relationship. The critical flaw in that argument, according to the Court, was that, despite Sun Oil's past complaints to Seahorse (e.g., about nonpayment and overextension of credit), its continuing relationship with Seahorse led to the permissible inference that Sun Oil did not consider any of Seahorse's transgressions grounds for termination. The Court observed: "There is a stark difference between complaints by one of the parties in a long-term business relationship and that party's intent to terminate the relationship. Even if Seahorse was delinquent, it justifiably relied on Sun Oil's inaction." Id.

Workhorse never told ANDCO of any conduct by ANDCO in violation of the Franchise Agreement before its termination notice. Even arguendo, had Workhorse made prior complaints, under the analogous case law cited above, such complaints do not satisfy the strict compliance required by the statutory notice. See Viviano-Wine Importers, Inc. v Kendall Jackson Winery, Ltd., 1991 U.S. Dist. LEXIS 8717 (E.D. Mich.), Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co., 295 F.3d 68, 77-79 (1st Cir. 2002). In fact, however, Workhorse did not give ANDCO the reasons for the termination notice until some time after the termination notice was sent. The ANDCO dealer contract purports to be a personal services contract with John Anderson, Sr., to whom no prior complaints were ever voiced concerning the operation of the Rhode Island dealership. Thus, while ANDCO may have been aware of the skirmish in Massachusetts, it had no reason to suspect that the alleged improper conduct in Massachusetts was imputed to it, particularly since its termination notice was received many months after the specific conduct in Massachusetts occurred which allegedly served as the basis for the ANDCO termination.

## 6. DEFECTIVE NOTICE IS NOT EFFECTIVE NOTICE.

Workhorse was required under RIGL 31-5.1-4(d)(2) and RIGL 31-5.1- (5)(ii) to provide **notice** of the **good cause** reasons for which it was terminating and to act in **good faith**. These are the cornerstones of the dealer protection statute. Because the Defendants failed to provide a "statement of the reasons" for terminating, there was a failure of strict compliance with the statute. Based upon the failure of strict compliance required by RIGL 31-5.1- (5)(ii), if the notice of Workhorse is defective by reason of the February 1, 2007 letter, then ANDCO has

never received effective notice within the meaning of RIGL 31-5.1-4(d)(2) and RIGL 31-5.1-(5)(ii). Consequently, Workhorse's termination of ANDCO's franchise would be in violation of RIGL 31-5.1-4(d)(2) and RIGL 31-5.1-(5)(ii). Defective notice is not effective notice. See Mobil Oil Corp. v. Vachon, 580 F. Supp. 153, 158 (D. Mass. 1983). Thus, Workhorse acted in violation of the dealer protection statutes, RIGL 31-5.1-4(d)(2) and RIGL 31-5.1-4(d)(5), and ANDCO is entitled to injunctive relief to enjoin further injury.

**B. THE STATUTORY AUTHORIZATION TO OBTAIN AN INJUNCTION UNDER RIGL 31-5.1-13 ABROGATES THE REQUIREMENT TO SHOW IRREPARABLE HARM.**

1. THE LEGISLATURE ABROGATED THE NEED TO SHOW IRREPARABLE HARM BY SPECIFIC STATUTORY LANGUAGE.

In issuing injunctive relief against Workhorse, this Court must look to the meaning and operation of RIGL § 31-5.1-13. Civil remedies:

(a) … any party to a franchise who is so **injured** in his or her business or property **by a violation of this chapter** relating to that franchise…**may bring a civil action** in the superior court **to enjoin** further violations, **….**(emphasis added).

Under the statutory language, a franchisee must establish (1) a violation in connection with the franchise; and (2) injury to business or property related to the violation. The statutory language does not require the franchisee to establish irreparable harm.

2. STATUTORY AUTHORITY FOR AN INJUNCTION PRECLUDES THE NEED FOR SHOWING "IRREPARABLE HARM".

a. *Rhode Island Case Law Suggests that "Irreparable Harm" May be Abrogated by Statute.*

While this appears to be a case of first impression in this jurisdiction, there is reference in Rhode Island case law dicta that suggests that a violation of a statute may constitute adequate harm per se such that either there is no requirement to show irreparable harm or that irreparable harm is presumed. See RI Turnpike & Bridge Authority v. Cohen, 433 A.2d 179,184 ( RI 1981). In that case, the Rhode Island Turnpike and Bridge Authority sought an injunction

against a corporation which was violating the authority's restriction on the bulk sale of bridge tokens. Id. The Rhode Island Supreme Court stated that although it had not found sufficient evidence of irreparable harm:

> "…our determination does not preclude action by the Legislature. Legislation making the unauthorized transfer of tokens a civil or criminal offense could be proposed. The enabling act could be amended to include a provision granting the plaintiff the power to petition for injunctive relief to enjoin interferences with its statutory duties. Such a statute could be intended to abrogate the requirement of irreparable harm" Id.

*b. First Circuit Court of Appeals Holds that Analogous Statute Abrogates "Irreparable Harm".*

The Court in The Cadillac/Oldsmobile/Nissan Center, Inc., v. General Motors Corp., 391 F.3d 304 (1st Cir. 2004), a case directly on point, interpreted a virtually identical statute in Massachusetts and held that there was no requirement to show "irreparable harm" prior to issuance of a statutory injunction for a manufacturer's violation of the "Dealers' Bill of Rights" law. This case involved alleged unfair competition between a dealer and a manufacturer-owned competing dealer for which unfair competition there was a statutory remedy of injunctive relief under the "Dealers' Bill of Rights Act".

In discussing the legislative purpose of the Massachusetts law, Judge Selya's explanation is a clear parallel with our Supreme Court's explanation in Dunne Leases Cars & Trucks v. Kenworth Truck Co., 466 A.2d 1153, 1157-1158 (R.I. 1983). Judge Selya notes that a purpose of the law is to curb the potentially oppressive power of automobile manufacturers in relation to their affiliated dealers by placing certain conduct off limits as "unfair methods of competition and unfair or deceptive acts or practices." Mass. Gen. Laws ch. 93B, § 3. The Massachusetts legislature created a private right of enforcement under 93(B)(12)(A) which authorizes:

> "any franchisee or motor vehicle dealer who suffers any loss of money or property . . . as a result of a violation of the statute by a manufacturer to bring a civil action for equitable relief or damages.." Cadillac/Oldsmobile/Nissan Ctr., Inc. v. GMC, 391 F.3d 304, 306 (1st Cir. 2004).

The dealer in the Cadillac case contended it was entitled to an injunction even though the dealer suffered no loss of business, and that a violation of the dealer protection statute alone was sufficient to warrant injunctive relief.

In analyzing the injunction statute, Judge Selya stated that:

> "a plaintiff seeking damages under chapter 93B must show more than that a defendant violated some substantive provision of the statute. Rather, the plaintiff must show both that a violation occurred and that the violation harmed the plaintiff." Id. at p. 311.
>
> He further observed, however, that:
>
> "a dealer who fears unfair competition from a manufacturer's overlong ownership and operation of a competing dealership can seek injunctive relief without having to show actual damages (or even threatened irreparable harm, as is normally required for an injunction)… Rather, the plaintiff may obtain relief upon a showing that the defendant's violation may cause the plaintiff injury." Id.

Clearly, under the analysis provided by the First Circuit Court of Appeals, RIGL § 31-5.1-13, which is analogous in language and in legislative purpose to Mass. ch. 93B, § 12A, does not require a dealer to show "irreparable harm". In fact, the dealer need show only threatened injury, provided that the nature of the injury is related to the statutory violation by the manufacturer.

This type of "statutory" injunction has parallels in other areas of business regulation. Case law involving oil franchises, for example, supports ANDCO's argument that the language of RIGL § 31-5.1-13 provides for injunctive relief without a showing of "irreparable harm". See, Mobil Oil Corp. v. Vachon, 580 F. Supp. 153, 159 (D. Mass. 1983). There, also, we find authority for the abrogation of "irreparable harm" in enjoining violations of statutory regulation.

**CONCLUSION:**

The purpose of RIGL § 31-5.1-13, is to protect the dealer from the unfair practices of the automobile manufacturer, i.e. to shelter the weaker party from the unequal and overpowering strength of the manufacturing giant. ANDCO will be injured by a loss of existing and future business if Workhorse terminates its dealership. Based upon the failure to provide the statutory required notice and good reasons for termination, ANDCO can show a likelihood of success on the merits. Based upon that showing, and the injury that flows from loss of the dealership, ANDCO is entitled to its requested injunctive relief authorized by RIGL § 31-5.1-13.

ANDCO, INC. d/b/a ANDERSON MOTORS,
By its attorney,

/s/ Joshua Teverow
Joshua Teverow, Esquire (#2132)
Joshua Teverow, Esquire, Ltd.
55 Pine Street
Providence, Rhode Island 02903
401-272-2900 (Phone)
401-331-2656 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing Plaintiff's Supplemental Memorandum in Support of Motion for Preliminary Injunction through the ECF system on the 23rd day of May, 2007, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case No. 07-00159-T-LDA, and by facsimile to counsel admitted *pro hac vice*.

James R. Oswald, Esquire
joswald@apslaw.com

Geoffrey W. Millsom
gmillsom@apslaw.com

Louis S. Chronowksi, Esquire
Michael R. Levinson, Esquire
Fax: 1-312-460-7891

/s/ Joshua Teverow